**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELITE CENTER FOR MINIMALLY INVASIVE SURGERY, LLC** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17-cv-1050** |
| | § | |
| **ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., RIGHTCHOICE MANAGED CARE, INC., ANTHEM HEALTH PLANS OF NEW HAMPSHIRE, INC., COMMUNITY INSURANCE COMPANY, ANTHEM HEALTH PLANS OF VIRGINIA, INC., BLUE CROSS BLUE SHIELD OF WISCONSIN, BLUE CROSS AND BLUE SHIELD OF ALABAMA, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, BLUE CROSS AND BLUE SHIELD OF LOUISIANA, BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, BCBSM, INC. D/B/A BLUE CROSS AND BLUE SHIELD OF MINNESOTA, BLUE CROSS AND BLUE SHIELD OF NEBRASKA, BLUE CROSS AND BLUE SHIELD OF TENNESSEE, INC., BLUE SHIELD OF CALIFORNIA, EMPIRE HEALTHCHOICE HMO, INC., HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, HIGHMARK INC., HORIZON HEALTHCARE SERVICES, INC. D/B/A HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INDEPENDENCE BLUE CROSS OF PENNSYLVANIA, and PREMERA BLUE CROSS** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

NOW COMES, ELITE CENTER FOR MINIMALLY INVASIVE SURGERY, LLC,

hereinafter referred to as Plaintiff, complaining of and about ANTHEM BLUE CROSS LIFE AND

HEALTH INSURANCE COMPANY, ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., RIGHTCHOICE MANAGED CARE, INC., ANTHEM HEALTH PLANS OF NEW HAMPSHIRE, INC., COMMUNITY INSURANCE COMPANY, ANTHEM HEALTH PLANS OF VIRGINIA, INC., BLUE CROSS BLUE SHIELD OF WISCONSIN, BLUE CROSS AND BLUE SHIELD OF ALABAMA, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, BLUE CROSS AND BLUE SHIELD OF LOUISIANA, BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, BCBSM, INC. D/B/A BLUE CROSS AND BLUE SHIELD OF MINNESOTA, BLUE CROSS AND BLUE SHIELD OF NEBRASKA, BLUE CROSS AND BLUE SHIELD OF TENNESSEE, INC., BLUE SHIELD OF CALIFORNIA, EMPIRE HEALTHCHOICE HMO, INC., HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, HIGHMARK INC., HORIZON HEALTHCARE SERVICES, INC. D/B/A HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INDEPENDENCE BLUE CROSS OF PENNSYLVANIA, and PREMERA BLUE CROSS, hereinafter referred to as Defendants, and for cause of action show unto the Court the following:

## INTRODUCTION

1.      This is an action by a medical provider against health insurance companies for failure to properly reimburse for services rendered to insureds/patients. ELITE CENTER FOR MINIMALLY INVASIVE SURGERY, LLC hereinafter "Plaintiff," obtained assignments of benefits from its patients, who are the insureds of the named Defendants, which allowed it to assert the causes of action herein. Plaintiff provided medical services to those patients. Plaintiff then properly and timely submitted claims for reimbursement to Defendants for the services it provided. Defendants failed to properly reimburse Plaintiff pursuant to the terms of the employee benefit

plans or insurance contracts covering those patients for the services that Plaintiff rendered. Defendants' failure to reimburse spanned over a period of twelve months, covering 885 claims and over $19 million in rendered medical services. Plaintiff brings this lawsuit seeking compensation for the services it rendered and which it is owed under the health benefit plan.

## PARTIES

1.      Plaintiff, ELITE CENTER FOR MINIMALLY INVASIVE SURGERY, LLC is a Texas Limited Liability Company with operations and its place of business in Harris County, Texas.

2.      Defendant, ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, is a corporation that is incorporated under the laws of and has its principal place of business in the State of California. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, CT Corporation System, at 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

3.      Defendant, ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Colorado. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, The Corporation Company, at 1675 Broadway, Suite 1200, Denver, Colorado 80202.

4.      Defendant, ANTHEM HEALTH PLANS OF NEW HAMPSHIRE, INC., is a corporation that is incorporated under the laws of and has its principal place of business in the State of New Hampshire. Defendant does not have a registered agent for service of process in the

3

State of Texas. Service of process on the defendant may be made by serving its registered agent, C T Corporation System at 9 Capitol Street, Concord, New Hampshire, 03301.

5.      Defendant, RIGHTCHOICE MANAGED CARE, INC., is a corporation that is incorporated under the laws of and has its principal place of business in the State of Missouri. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

6.      Defendant, COMMUNITY INSURANCE COMPANY, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Ohio. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, CT Corporation System, at 1300 East Ninth Street, Cleveland, Ohio 44114.

7.      Defendant, ANTHEM HEALTH PLANS OF VIRGINIA, INC., is a corporation that is incorporated under the laws of and has its principal place of business in the State of Virginia. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the Defendant may be made by serving its registered agent, CT Corporation System, at 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060.

8.      Defendant, BLUE CROSS AND BLUE SHIELD OF WISCONSIN, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Wisconsin. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the Defendant may be made by serving its registered agent, CT Corporation System, at 8020 Excelsior Drive Suite 200, Madison, Wisconsin 53717.

9.      Defendant, BLUE CROSS AND BLUE SHIELD OF ALABAMA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of

4

Alabama. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving its agent, James Lewis Priester, 450 Riverchase Pkwy. East, Birmingham, AL 35244.

10.     Defendant, BLUE SHIELD OF CALIFORNIA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of California. Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving its agent Seth Jacobs at 50 Beal Street, San Francisco, California 94105.

11.     Defendant, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. is a corporation that is incorporated under the laws of and has its principal place of business in the State of Georgia. Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving may be made by serving any officer or registered agent of the corporation at 3350 Peachtree Road, N.E., Atlanta, Georgia 30326.

12.     Defendant, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Missouri. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving may be made by serving any officer or agent of the corporation at 2301 Main Street, one Pershing Square, Kansas City, Missouri 64108.

13.     Defendant, BLUE CROSS AND BLUE SHIELD OF LOUISIANA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Louisiana. Defendants does not have a registered agent for service of process in the State

of Texas. Service of process on the Defendants may be made by serving any officer or agent of the corporation at 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.

14.     Defendant, BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Massachusetts. Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving any officer or agent of the corporation at 101 Huntington Ave. Ste 1300 Boston, MA 02199.

15.     Defendant, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Michigan Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving any officer or agent of the corporation at 600 E. Lafayette Blvd., Detroit, Michigan 48226.

16.     Defendant, BCBSM, INC. D/B/A BLUE CROSS AND BLUE SHIELD OF MINNESOTA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Minnesota. Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving any officer or agent of the corporation at 3535 Blue Cross Road, St. Paul, Minnesota 55614.

17.     Defendant, BLUE CROSS AND BLUE SHIELD OF NEBRASKA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Nebraska. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its agent of the corporation Russell S. Collins at 1919 Aksarben Drive, Omaha, NE 68106.

18.     Defendant, BLUE CROSS AND BLUE SHIELD OF TENNESSEE, is a corporation that is incorporated under the laws of and has its principal place of business in the

6

State of Tennessee. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent Anne Hance, at 1 Cameron Hill CIR, Chattanooga, TN 37402-9815.

19.     Defendant, EMPIRE HEALTHCHOICE HMO, INC., is a corporation that is incorporated under the laws of and has its principal place of business in the State of New York. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, CT Corporation System, at 111 Eighth Avenue, New York, New York 10011.

20.     Defendant, HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, is a corporation that is incorporated under the laws of the State of Illinois and has its principal place of business in the State of Illinois. Defendants does not have a registered agent for service of process in the State of Texas. It may be served with process by serving any officer or agent of the corporation at 300 East Randolph Street, Chicago, Illinois 60601.

21.     Defendant, HIGHMARK INC., is a corporation that is incorporated under the laws of and has its principal place of business in the State of Pennsylvania. Defendants does not have a registered agent for service of process in the State of Texas. Service of process on the Defendants may be made by serving its agent, Kenneth R. Melani, located at 1800 Center Street, Camp Hill, Pennsylvania 17011.

22.     Defendant, HORIZON HEALTH CARE SERVICES, INC. d/b/a Horizon Blue Cross Blue Shield of New Jersey is a corporation that is incorporated under the laws of and has its principal place of business in the State of North Jersey. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving any officer or agent of the corporation at 3 Penn Plaza East, Newark, NJ 07105-2200.

23.     Defendant, INDEPENDENCE BLUE CROSS OF PENNSYLVANIA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Pennsylvania. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving any officer or agent of the corporation at 1333 Chestnut Street, Philadelphia, PA 19107-0.

24.     Defendant, PREMERA BLUE CROSS, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Washington. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on the defendant may be made by serving its registered agent, CT Corporation System, at 505 Union Avenue SE, Suite 120, Olympia, Washington 98501.

## JURISDICTION AND VENUE

25.     Plaintiff's claims arise in part under 29 U.S.C. §§ 1001, *et seq.*, the Employment Retirement Income Security Act ("ERISA"). Therefore, this Court has jurisdiction over those claims under 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's non-ERISA claims, as those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

26.     This court has personal jurisdiction over all Defendants. Under 29 U.S.C. § 1132(e)(2), a federal district court of the United States may exercise personal jurisdiction over a defendant where the defendant has sufficient ties to the United States. Each Defendant in this action has sufficient ties with the United States. Furthermore, each of the Defendants have purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction. The assumption of jurisdiction over Defendants will not offend traditional

notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

27.     Defendants had continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction.

28.     In accordance with 29 U.S.C. § 1132(e)(2), venue is proper because the Southern District of Texas is the district where the plans were administered, where the breach took place, and/or where a defendant resides or may be found. Furthermore, the non-ERISA claims arose out of a common nucleus of operative facts as the ERISA claims in this lawsuit.

29.     Additionally, venue is properly established in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in this judicial district.

## STATEMENT OF FACTS

30.     Plaintiff is a medical provider that offers ambulatory surgical services in the fields of orthopedics, podiatry, pain management, spine, gastroenterology, and pediatric ENT. Their teams consist of seasoned professionals, including award-winning surgeons and top-performing nurses and staff.

31.     Healthcare providers, such as Plaintiff, are classified as either "in-network" medical providers or "out-of-network" medical providers.  In-network medical providers have pre-determined, discounted rates with health insurance companies.  Conversely, out-of-network medical providers do not have pre-determined discounted rates with health insurance companies. Health insurance companies are required to pay for out-of-network services in accordance with the health benefit plan.

32.     Patients pay significantly higher health insurance premiums for out-of-network health benefits in order to have access to out-of-network medical providers.  Patients pay these

higher premiums for assurance and peace of mind that they will be able to obtain necessary medical services from the physician, medical provider and medical facility of their choice.

33.     The claims at issue relate to health benefit plans that were either fully-insured or self-insured plans. Under a fully-insured plan, an employer or individual contracts with an insurance company who assumes financial responsibility for the payment of medical claims and administrative costs. Under a self-insured plan, an employer acts as the insurer and itself assumes financial responsibility for payment of medical claims. Employers retain the services of insurance companies, such as Defendants, to administer their self-insured health benefit plans. In administering the self-insured plans at issue in this case, Defendants exercised discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims.

34.     Defendants were the claim administrators and administered each and every claim at issue in this lawsuit. Defendants exercised discretion, control, authority and/or oversight in the administration of each of the claims. Specifically, Defendants interpreted the plan documents, distributed benefits under the plan terms, and determined the amount, if any, to pay Plaintiffs for their medical services under these claims.

35.     Defendants acted as the *de facto* plan administrator for each and every claim at issue in this lawsuit. Defendants exercised control over the plan generally and assumed responsibility for providing plan documentation to participants and/or their agents. Defendants either undertook and performed the duties of the plan administrator, and/or were delegated the administrator's duties by the health benefit plan.

36.     Plaintiff followed the same process for each and every claim as described below. This process is routine for Plaintiff's business and within the health care industry, and follows the procedures set forth in the plan documents.

37.    Plaintiff received orders from physicians requesting the scheduling of medical services to be performed by the physician at Plaintiff's surgical facility.  The orders contained the patient's name, contact information, and identified the medical services to be performed.

38.    Before Plaintiff rendered reasonable and necessary medical services for any of the claims at issue, Plaintiff received verification by telephone from Defendants that each patient was covered by a health benefit plan that provided out-of-network benefits. Plaintiff obtained verification from Defendants that the particular procedures were covered by the health benefit plan and would be paid in accordance with the health benefit plan.  During the verification process, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions. Plaintiff would not have provided these services to these patients without first obtaining this verification from Defendants.

39.    Following the verification process, Plaintiff scheduled the medical services with the patient.  Exhibit B, adopted and incorporated herein by reference, is a copy of the Assignment of Benefits each patient executed upon arrival for a procedure at Plaintiff's facility. The executed Assignment of Benefits transferred and assigned to Plaintiff the following non-exhaustive list of rights and interests: (1) the rights and interest to collect and be reimbursed for the patient's medical service(s) performed at Plaintiff's facility; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; and (3) the rights and interest to any legal or administrative claims and causes of action, including breach of fiduciary duty claims and other legal and/or administrative claims.[1]

---

[1] *See* Exhibit B. The operative language of this assignment reads in part as follows:

    I hereby assign and convey directly to the above-named health care provider, as my designated authorized representative, all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services, treatments, therapies, and/or medications rendered or provided by the above-named health care provider, regardless

40.     After medical services were performed, Plaintiff properly and timely submitted claims through Defendants' designated claims handling channels.  Defendants either denied the claims outright or drastically underpaid the claims. Once again, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions.

41.     After Defendants either denied or underpaid the claims, Plaintiff properly and timely appealed the non-payment or underpayment of the claims through Defendants' designated appeals channels.  Defendants denied each and every appeal for each and every claim at issue in this lawsuit, thereby exhausting Plaintiff's administrative remedies. Defendants failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse

---

of its managed care network participation status…

In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to the above named health care provider any legal or administrative claim or chose an action arising under any group health plan, employee benefits plan, health insurance or tortfeasor insurance concerning medical expenses incurred as a result of the medical services, treatments, therapies, and/or medications I receive from the above-named health care provider (including any right to pursue those legal or administrative claims or chose an action). This constitutes an express and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

I intend by this assignment and designation of authorized representative to convey to the above-named provider all of my rights to claim (or place a lien on) the medical benefits related to the services, treatments, therapies, and/or medications provided by the above-named health care provider, including rights to any settlement, insurance or applicable legal or administrative remedies (including damages arising from ERISA breach of fiduciary duty claims). The assignee and/or designated representative (above-named provider) is given the right by me to (1) obtain information regarding the claim to the same extent as me; (2) submit evidence; (3) make statements about facts or law; (4) make any request including providing or receiving notice of appeal proceedings; (5) participate in any administrative and judicial actions and pursue claims or chose in action or right against any liable party, insurance company, employee benefit plan, health care benefit plan, or plan administrator. The above-named provider as my assignee and my designated authorized representative may bring suit against any such health care benefit plan, employee benefit plan, plan administrator or insurance company in my name with derivative standing at provider's expense.

12

determination. For example, Defendants' explanations often stated: (1) *the claim was paid in accordance with the Allowable Amount*; (2) *the administrator maintained the prior decision;* or (3) *the claim was processed correctly*.

42.     As a result of Defendants' repeated failure to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, Defendants have waived and are thereby estopped from asserting such, including by not limited to anti-assignment provisions.

43.     Under the doctrine of laches, Defendants unreasonably delayed identification, assertion, or reliance on any exclusions, conditions, or other prerequisites within the health benefit plan including, by not limited to anti-assignment provisions.

44.     Despite multiple opportunities, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan. Plaintiff would not have provided these services had Defendants identified such. Any attempt by Defendants to assert any exclusions, conditions, or prerequisites after a substantial amount of time is prejudicial to Plaintiff. Therefore, Defendants are barred from enforcing any exclusions, conditions, or other prerequisites within the health benefit plan.

45.     Exhibit A, which is adopted and incorporated herein by reference, is a spreadsheet showing the non-payments and underpayments for each claim at issue in this case.  The spreadsheet contains the claim number, date of service, insurance ID number, billed charges, and BCBS payments for each claim at issue. It also classifies each claim as ERISA or non-ERISA.

46.     Plaintiff billed $19,764,344.14, which is the usual and customary rate for the particular medical services in and around Harris and Fort Bend County. Defendants collectively paid a mere $1,863,428.96 which is approximately 9.4% of the amount billed for the services rendered.

47.     For each claim at issue, Defendants failed to pay benefits in accordance with the plan document. The plan document establishes payment for out-of-network medical services based on an "allowable amount."[2] Payment of 9.4% for reasonable and necessary medical services is drastically lower than any other recognizable third party commercial or government payor in the health insurance industry, including United, Cigna, Aetna and Medicare. Through Plaintiff's experience and established industry standards, the payment of nine cents on the dollar to out-of-network medical providers for the rendering of medical treatment is unprecedented. Furthermore, the course of dealings between the Plaintiff and the respective Defendants demonstrates payment reimbursements at significantly higher rates than those made for the claims alleged in this case.

48.     Moreover, based on information and belief, payment of 9.4% for reasonable and necessary medical services is drastically lower than any possible source on which the respective health benefit plans' allowable amount language may be based.

49.     Plaintiff's causes of action arise out of violations of two separate categories of insurance policies: ERISA plans and non-ERISA plans.[3] The ERISA plans are "employee welfare benefit" plans as defined under 29 U.S.C. Section 1002(3). The section of this complaint entitled "Defendants' Violations of ERISA" alleges causes of action for the plans arising under ERISA.

---

[2] The phrase "allowable amount" referenced throughout Plaintiff's Original Complaint refers to the specific plan terms and plan term definitions for each claim identified within Exhibit A. Allowable amount, for the purpose of this pleading, based on information and belief, respectively refers but is not limited to, the following: allowable amount, maximum allowable charge, allowable charge, eligible expenses, eligible charge, covered expenses, maximum allowance, reasonable and customary charge, schedule of maximum allowance, usual and customary, provider rate, allowed expense, participating provider rate, nonparticipating provider rate, and/or the customary charge. The allowable amounts, for the claims at issue, may be based on one or more of the following: the Administrator's sole discretion, the Plan at its sole discretion, contracts with in-network providers, the administrator's fee schedule, the average charge for the care in the area, the charge or average charge for the same or similar service, pricing data from the local BCBS plan, the relative complexity of the service, in-network allowance, state or federal law, the rate of inflation using recognized measure, other reasonable limits, provider's billed charges, BCBS's non-contracting amount, approximately 100% of the base Medicare reimbursement, 150% of the published rates allowed by the Center for Medicare, approximately 300% of the base Medicare reimbursement, approved Medicare rate, 50% of the billed charges, the claims administrator's applicable proprietary fee schedule, state fee schedules, rate and payment methodologies, third party vendor rates, etc.

[3] The plans within Exhibit A that are governed by ERISA are identified as "ERISA."

50.     The non-ERISA plans, within this litigation, are categorized as government plans and private plans.[4]  Government plans are those in which state or local government entities contract with Defendants to administer health benefits to their employees. Private plans are those in which individuals contract with Defendants to administer health benefits. These plans are governed by Texas state law. The section of this complaint entitled "State Law Claims" alleges causes of action for these plans arising under Texas state law.

51.     The 885 claims identified in Exhibit A, and their respective health benefit plans, are categorized as follows:

**ERISA v. Non-ERISA**

| | |
|---|---|
| ERISA | 745 |
| Non-ERISA | 140 |

**DEFENDANTS' VIOLATIONS OF ERISA**

52.     The allegations contained in Paragraphs 1 through 50 are re-alleged and incorporated herein as if set forth verbatim. Plaintiff alleges violations of ERISA relating to non-payment and underpayment of health benefit claims identified in Exhibit A as "ERISA."

53.     29 U.S.C. § 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  Plaintiff, as assignee of the ERISA insured members, is the beneficiary for all purposes throughout this Complaint.

54.     29 U.S.C. § 1002(21)(A)(iii)  determines that one is a "fiduciary" to the extent that the person "has any discretionary authority or discretionary responsibility in the administration" of a health benefit plan. Defendants functioned as fiduciaries with respect to the plans at issue in this case, because Defendants exercised discretion, authority, and control in determining whether

---

[4] The plans within Exhibit A that are non-ERISA plans are identified as "non-ERISA."

and to what extent benefits would be paid to Plaintiff.  Therefore, Defendants are fiduciaries to Plaintiff.

## COUNT 1: PROVIDERS' CLAIMS UNDER 29 U.S.C. § 1132(a)(1)(B)

55.     The allegations contained in Paragraphs 1 through 53 are re-alleged and incorporated herein as if set forth verbatim.

56.     Plaintiff brings this action as a beneficiary to recover benefits due under health benefit plans governed by ERISA. Under 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to recover benefits for providing medical services to patients from whom Plaintiff received an Assignment of Benefits. Plaintiff received an assignment of benefits for each claim at issue.

57.     Plaintiff submits the following allowable amount provisions as representative exemplars of the specific plan terms violated for the claims at issue in this lawsuit. Based on information and belief, these exemplars are representative of the larger universe of plans at issue.

## EXEMPLAR NO. 1

Out-of-Network Providers: The allowed amount for care rendered by out-of-network providers is often determined by the Blue Cross and/or Blue Shield plan where services are rendered. This amount may be based on the negotiated rate payable to in-network providers or may be based on the average charge for the care in the area. In other cases, Blue Cross and Blue Shield determines the allowed amount using historical data and information from various sources such as, but not limited to:

- The charge or average charge for the same or a similar service;

- Pricing data from the local Blue Cross and/or Blue Shield plan where services are rendered;

- The relative complexity of the service;

- The in-network allowance for the same or a similar service;

- Applicable state health care factors;

- The rate of inflation using a recognized measure; and,

- Other reasonable limits, as may be required with respect to outpatient prescription drug costs.

## EXEMPLAR NO. 2

The portion of a provider's fee that the Plan allows as a Covered Expense. Allowed Amount is the lesser of the provider's charge for care or the amount of the charge that is determined by Blue Cross and Blue Shield to be allowable. Allowed Amount determination is dependent upon the type of provider and the state in which services are provided:

Non-Network Providers: The Allowed Amount is determined using historical data and information from various sources such as, but not limited to:

- The charge or average charge for the same or a similar service;

- The fees charged by other providers of the same specialty for the same or similar service within the same geographic area;

- The amount of time, skill, or experience a service might require;

- The rate of inflation, using a recognized measure; and

- Other reasonable limits, as may be required with respect to outpatient Prescription Drug costs.

## EXEMPLAR NO. 3

For Hospitals, other institutional health care facilities, Physicians or suppliers of medical goods and services, which are Non-PPO Providers and Non-Participating Providers outside Our Service Area-

The Allowable Charge is the lesser of:

(1)     The amount that the local Blue Cross and/or Blue Shield Plan ("Host Blue") passes on to Us if the claim was submitted to Us through the BlueCard PPO Program for Physicians or suppliers of medical goods and services; or

(2)     An amount that is based on the nationally recognized fee schedule to which BCBS currently subscribes if the claim is not submitted to Us through the BlueCard PPO Program. If no allowable is available because the service provided does not have a specific code, BCBS will apply the same methodology used to establish an allowable for a Participating Provider; or

(3)     The amount the provider has agreed to accept as payment in full at the time of claim payment; or

(4)     The provider's billed charges.

**EXEMPLAR NO. 4**

The lesser of the billed charge or the amount established by the Claims Administrator or negotiated as the maximum amount allowed for all Provider services covered under the terms of this Benefit Plan.

**EXEMPLAR NO. 5**

For Out-of-Network Provider services outside of the state in which the plan is established, except those described under Special Circumstances below, the allowed amount will be an amount based upon one of the following payment options, to be determined by the Claims Administrator at its discretion: (1) a Nonparticipating Provider fee schedule posted at the Claims Administrator's website; (2) a percentage of the published Medicare allowed charge for the same or similar service; (3) a percentage of billed charges; (4) pricing determined by the Host Blue plan; or (5) pricing using a nationwide provider reimbursement database. The payment option selected by the Claims Administrator may result in an allowed amount that is a lower amount than if calculated by another payment option."

**EXEMPLAR NO. 6**

(b) For Non-Participating Professional Providers, the Maximum Allowance will be the lesser of:

  (i) the Provider's billed charges, or;

  (ii) the Claim Administrator non-contracting Maximum Allowance.

Except as otherwise provided in this section, the non-contracting Maximum Allowance is developed from base Medicare reimbursements and represents approximately 100% of the base Medicare reimbursement rate and will exclude any Medicare adjustment(s) which is/are based on information on the Claim.

**EXEMPLAR NO. 7**

The Allowable Amount will be the lesser of: (i) the Provider's billed charges, or; (ii) the BCBS noncontracting Allowable Amount. The non-contracting Allowable Amount is developed from base Medicare Participating reimbursements adjusted by a predetermined factor established by the Claim Administrator. Such factor shall be not less than 75% and will exclude any Medicare adjustment(s) which is/are based on information on the claim.

58. Patients remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendants' failure to pay in accordance with the plan document resulted in actual injury to the patient.

59.     For each claim at issue, Defendants abused their discretion in administering the claims, failed to pay out-of-network benefits in accordance with the allowable amount, and thus breached the terms of the plan documents. Defendants denied or drastically underpaid the claims governed by ERISA in this case, resulting in damages to Plaintiff of $15,558,961.13.

### COUNT 2: FAILURE TO PROVIDE REQUESTED INFORMATION

60.     The allegations contained in Paragraphs 1 through 58 are re-alleged and incorporated herein as if set forth verbatim.

61.     Defendants acted as the *de facto* plan administrator for each and every claim at issue in this lawsuit. Defendants exercised control over the plan generally and assumed responsibility for providing plan documentation to participants and/or their agents. Defendants either undertook and performed the duties of the plan administrator or were delegated the administrator's duties by the plan.

62.     29 U.S.C. § 1132(c) provides penalties for an administrator's refusal to supply required information.  29 U.S.C. § 1132(c)(1)(B) provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

63.     Plaintiff submitted the written requests below to Defendants on July 24, 2014 and November 7, 2016.[12] The requests identified the claims, dates of procedures, the billed charges, and other material claim information. Additionally, Plaintiff provided Defendants with a signed authorization from each member to release plan documents to Plaintiff and/or its representative.[13] Plaintiff included each and every Defendants' claim listed within Exhibit A within the demand letters dated July 24, 2014 and November 7, 2016. The letters included, among other things, the following passage:

> *Pursuant to 29 U.S.C. § 1024, provide the following information for each and every BCBS claim identified in the enclosed spreadsheet and the respective plan within the next 30 days:*
>
> - *Copies of the Summary Plan Description for the years 2013, 2014, 2015 and the latest updated Summary Plan Description. The following information shall be included in the summary plan description:*
>   - *The name of the plan, and if different, the name by which the plan is commonly known by its participants and beneficiaries;*
>   - *The name and address of:*
>     - *In the case of a single employer plan, the employer whose employees are covered by the plan;*

---

[12] Plaintiff's written requests sent on July 24, 2014 was solely sent to Defendants Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois, Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Oklahoma, and Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Texas. The July 24, 2014 letter included, among other things, the following passage:

*Please provide, within the next 30 days, copies of all documents, records, writings and any other information considered in your determination for all the claims identified within the enclosed spreadsheet, including but not limited to the following:*

- *Name and contact information for the plan administrator, claims administrator, and plan sponsor;*
- *Documents used, considered, or relied upon by the plan administrator or claims administrator in forming his/her decision;*
- *Names and title of persons who the plan administrator or claims administrator consulted with in forming his/her decision;*
- *Copies of the ENTIRE Master Plan;*
- *Copies of the Summary Plan Description;*
- *Copies of the Employer Plan; and*
- *Copies of any other documents under which the plan is established or operated.*

*As you know, HCSC's failure to provide the above requested information is actionable under 29 U.S.C. § 1132(c)(1)(B). A civil penalty or sanction in the amount of $110 per day can be imposed upon HCSC for failure to provide the documents requested for each of the 6,692 claims.*

[13] *See* Exhibit B.

20

- *In the case of a plan maintained by an employee organization for its members, the employee organization that maintains the plan;*
- *In the case of a collectively-bargained plan established or maintained by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, parent or most significantly employer of a group of employers all of which contribute to the same plan, or other similar representative of the parties who established or maintain the plan, as well as a statement that participants and beneficiaries may receive from the plan administrator, upon written request, information as to whether a particular employer or employee organization is a sponsor of the plan and, if the employer or employee organization is a plan sponsor, the sponsor's address;*
- *In the case of a plan established or maintained by two or more employers, the association, committee, joint board of trustees, parent or most significant employer of a group of employers all of which contribute to the same plan, or other similar representative of the parties who established or maintain the plan, as well as a statement that participants and beneficiaries may receive from the plan administrator, upon written request, information as to whether a particular employer is a sponsor of the plan and, if the employer is a plan sponsor, the sponsor's address;*

o *The employer identification number (EIN) assigned by the Internal Revenue Service to the plan sponsor and the plan number assigned by the plan sponsor.*

o *The type of administration of the plan, e.g., contract administration, insurer administration, etc.;*

o *The name, business address and business telephone number of the plan administrator as that term is defined by section 3(16) of ERISA;*

o *The name, business address and business telephone number of the claims administrator;*

o *The name of the person designated as agent for service of legal process, and the address at which process may be served on such person, and in addition, a statement that service of legal process may be made upon a plan trustee or the plan administrator;*

o *The name, title and address of the principal place of business of each trustee of the plan;*

o *If a plan is maintained pursuant to one or more collective bargaining agreements, a statement that the plan is so maintained and a description of collective bargaining agreement provisions. A plan is maintained pursuant to a collective bargaining agreement if such agreement controls any duties, rights or benefits under the plan, even though such agreement has been superseded in part for other purposes;*

o *The plan's requirements respecting eligibility for participation and for benefits and a description or summary of the benefits;*

o *A description of whether, and under what circumstances, coverage is provided for medical tests, devices and procedures; provisions governing*

21

*the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for out-of-network services; any conditions or limits on the selection of primary care providers or providers of specialty medical care; any conditions or limits applicable to obtaining emergency medical care; and any provisions requiring preauthorizations or utilization review as a condition to obtaining a benefit or service under the plan;*

o *Provide a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits;*

o *The procedures governing claims for benefits (including procedures for obtaining preauthorizations, approvals, or utilization review decisions in the case of group health plan services or benefits, and procedures for filing claim forms, providing notifications of benefit determinations, and reviewing denied claims in the case of any plan), applicable time limits, and remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of Title I of the Act);*

o *A summary of any material modification to the plan (SMM);*

o *A description of rights of participants and beneficiaries ascribed by ERISA pertaining to the plan;*

- *Amendments to the Plan Documents (including, but not limited to the Summary Plan Description) for the years 2013, 2014, 2015 and latest updated version;*

- *All contracts under which the plan is established or operated, including but not limited to: Insurance Contracts, Stop Loss Contracts, Health Insurance Contracts, Insurance Intermediary Services Contracts, Collective Bargaining Agreements and Administrative Services Contracts for the years 2013, 2014, 2015 and the latest updated version;*

- *The SMM (Summary of Material Modification) statements for the years 2013, 2014, 2015 and/or the latest updated version;*

- *Form 5500, including all attached schedules, filed with the U.S. Department of Labor for the years 2013, 2014, 2015 and the latest annual report;*

- *Copies of any other documents under which the plan is established or operated, including but not limited to:*

o *Formal, binding documents that serve as the foundational documents under which the plan was created and is governed;*

o *Written legal documents that govern the rights, obligations, duties, entitlements, or liabilities under the plan;*

o *Documents used, considered, or relied upon by the plan administrator or claims administrator in forming his/her decision;*

o *Documents which were considered, relied upon, or reviewed in determining the amount the claims administrator would have considered for payment for the same procedure, service or supply;*

     o   *Documents that reflect procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's plan benefit including, but not limited to, a plan's fee schedule of the Allowable Amount, usual and customary rate, BCBS's non-contracting Allowable Amount, BCBS's contracting Allowable Amount, base Medicare participating reimbursements, Medicare adjustments, regional or state fee schedules, rates negotiated, parplan network, an equivalent contracting surgical facility, contractually determined dispensing fee, contractually determined discount amount, percentage allowable amounts, rate payment methodologies or any pre-determined factors established by BCBS applicable to benefit reimbursement;*

     o   *Documents which were considered, relied upon, or reviewed in determining the Allowable Amount that is based on the same charged by other service provider's in the geographical area with similar training, experience and medical facilities; and*

     o   *Documents containing studies, schedules, information and data (for example charges for specific medical or surgical procedures) that is used to determine or calculate a participant's and beneficiary's entitlement to plan benefits.*

     *As you know, BCBS failure to provide the above requested information is actionable under 29 U.S.C. § 1132(c)(1)(B). A civil penalty or sanction in the amount of $110 per day can be imposed upon BCBS for failure to provide the documents requested for each of the claims identified in the enclosed spreadsheet.*

64.    Despite Plaintiff's requests, Defendants produced nothing to Plaintiff or its representatives. Defendants failed to comply with its obligations under ERISA to provide requested information.[14] The patient and Plaintiff, as assignee, suffered injury as it was unable to recover benefits due under the terms of the plan, enforce the rights under the terms of the plan, or clarify the rights to future benefits under the terms of the plan.

---

[14]29 U.S.C. § 1024(b)(4) states, in part, "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, or other instruments under which the plan is established or operated." No such documents were ever produced to Plaintiff despite the repeated requests made by Plaintiff and its attorneys. Moreover, pursuant to 29 C.F.R. 2560.503-1(h)(2), Defendants were required, among other things, to do the following:

    (ii)    Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

    (iii)   Provide that a claimant be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

65.     Defendants' failure to comply with the request for information pursuant to 29 U.S.C. § 1132(c)(1)(B) and in violation of 29 C.F.R. 2560.503-1(h), make Defendants liable for civil penalties in the amount of $110 per day.  As such, Plaintiff is entitled to the requested documents and civil penalties of $110 per day for each of Defendants' claims at issue in this case, as well as attorney's fees, and costs.

## STATE LAW CLAIMS

66.     The allegations contained in Paragraphs 1 through 64 are re-alleged and incorporated herein as if set forth verbatim. Plaintiff alleges violations of Texas state law relating to non-payment and underpayment of health benefit claims identified in Exhibit A as "Non-ERISA."

## COUNT 3: BREACH OF CONTRACT

67.     The allegations contained in Paragraphs 1 through 65 are re-alleged and incorporated herein as if set forth verbatim.

68.     Plaintiff brings this action as an assignee to recover benefits due under Texas state law. Plaintiff is entitled to recover benefits for providing medical services to patients from whom Plaintiff received an Assignment of Benefits. Plaintiff received an assignment of benefits for each claim at issue.

69.     With respect to government plans, Texas government entities entered into contracts with Defendants to administer health benefits to their employees. Under these contracts, Defendants agreed to administer out-of-network benefits in accordance with the health benefit plan. Specifically, Defendants agreed to pay claims in accordance with the allowable amount. The allowable amount establishes payment for out-of-network medical services and is found within the health benefit plan. In turn, governmental employees paid higher premiums for out-of-network coverage and benefits.

70.     Government employees are third party beneficiaries to contracts entered between Defendants and Texas government entities. Government employees are parties to the health benefit plans entered between Texas government entities and its employees.

71.     Moreover, under Texas state law, multiple instruments may be construed together and treated as one contract. Defendants and government entities enter into contracts for the ultimate purpose of administering health benefits to government employees in accordance with the health benefit plan. Specifically, Defendants agree to pay claims in accordance with the allowable amount found within the health benefit plan.  Defendants must reference the health benefit plan to properly determine the allowable amount.

72.     Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to government employees.

73.     With respect to private plans, individuals contracted with Defendants to administer health benefits. Under these contracts, Defendants agreed to provide out-of-network benefits for medical services rendered. In turn, individuals paid higher premiums for out-of-network coverage and benefits.

74.     Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to individuals.

75.     Patients remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendants' failure to pay in accordance with the health benefit plan resulted in actual injury to the patient.

76.     Plaintiff submits the following allowable amount provisions as representative exemplars of the specific plan terms violated for the claims at issue in this lawsuit. Based on information and belief, these exemplars are representative of the larger universe of plans at issue.

## EXEMPLAR NO. 8

For hospitals and facility other providers, physicians, and professional other providers not contracting with Blue Cross and Blue Shield of Texas in Texas or any other Blue Cross and Blue Shield Plan outside of Texas (non-contracting allowable amount) — The non-contracting allowable amount for TRS-ActiveCare coverage will be 50% of the provider's billed charges.

## EXEMPLAR NO. 9

The Allowable Amount will be the lesser of: (i) the Provider's billed charges, or; (ii) the BCBSTX noncontracting Allowable Amount. The non-contracting Allowable Amount is developed from base Medicare Participating reimbursements adjusted by a predetermined factor established by the Claim Administrator. Such factor shall be not less than 75% and will exclude any Medicare adjustment(s) which is/are based on information on the claim.

## EXEMPLAR NO. 10

The Allowable Amount will be the amount BCBS would have considered for payment for the same procedure, service, or supply at an equivalent contracting Hospital or Facility Other Provider, using regional or state fee schedules or rate and payment methodologies.

## EXEMPLAR NO. 11

Allowable Charge (Also called Provider's Reasonable Charge): For medical care received from Out-of-Network Providers, the Customary Charge not the Provider's actual charge, as determined by the Claims Administrator.

Customary Charge: For Out-of-Network Providers, it is the amount commonly charged for Services rendered by a Provider which is the prevailing charge within the Out-of-Network Provider's geographical area

77.     Defendants denied or drastically underpaid the claims governed by Texas state law in this case, resulting in damages to Plaintiff of $2,341,954.05.

## COUNT 4: PROMISSORY ESTOPPEL

78.     The allegations contained in Paragraphs 1 through 76 are re-alleged and incorporated herein as if set forth verbatim.

79.     Plaintiff brings the promissory estoppel cause of action for all claims at issue in this lawsuit including claims under ERISA and non-ERISA plans. Plaintiff brings this cause of action on its own behalf, separate and apart from any assignment of benefits.

80.     Before Plaintiff rendered reasonable and necessary medical services for any of the claims at issue, Plaintiff received verification by telephone from Defendants that each patient was covered by a health benefit plan.  Plaintiff obtained verification from Defendants that the particular procedures were covered by the health benefit plans. Additionally, Defendants verified Plaintiff would be paid a reasonable amount for the services rendered. Plaintiff would not have provided these services to these patients without first obtaining this verification from Defendants.

81.     Plaintiff substantially and reasonably relied to its detriment on the promises made by Defendants. Plaintiff would not have provided services without such promises. Defendants knew or should have known that Plaintiff would rely upon the promises.

82.     Because Plaintiff reasonably relied on Defendants' promises, and such reliance was foreseeable to Defendants, Plaintiff suffered damages in the amount of at least $17,900,915.18.

**DAMAGES**

83.     The allegations contained in Paragraphs 1 through 81 are re-alleged and incorporated herein as if set forth verbatim.

84.     Plaintiff is entitled to actual damages in the amount of at least $17,900,915.18.

85.     In addition, the acts and omissions on the part of Defendants in failing to comply with the request for information pursuant to 29 U.S.C. § 1132(c)(1)(B) and in violation of 29 C.F.R. 2560.503-1(h), makes Defendants liable for civil penalties in the amount of $110 per day for such failure and refusal to provide the requested documents.

86.    Plaintiff is entitled to an award of attorneys' fees on its ERISA claims.  *See* 29 U.S.C. § 1132(g)(1) (allowing a court, in its discretion to award "a reasonable attorney's fee and costs of action to either party.").

87.    Plaintiff is also entitled to an award of attorneys' fees on its state law claims. Plaintiff has submitted claims to Defendants, along with an Assignment of Benefits, demanding payment for the value of the services described above.  Defendants failed and refused to pay Plaintiff more than 30 days after the demands were made pursuant to the Texas Civil Practices and Remedies Code section 38.001.  As a result of Defendant's failure to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action.

## CONCLUSION

88.    Plaintiff requests that upon final hearing of this matter that it have a judgment against Defendants for its damages as stated in this pleading (which total actual damages being in the amount of $17,900,915.18 plus attorneys' fees as stated in this pleading, pre-judgment and post-judgment interest at the highest rate allowed plus its taxable court costs, as well as all relief pursuant to Rule 54(c) of the Federal Rules of Civil Procedure plus such other relief that Plaintiff may show itself to be justly entitled.

89.    Plaintiff prays for the following relief: judgment for actual damages; statutory penalties; attorneys' fees; pre- and post-judgment interest; costs of suit; and any other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

BERGQUIST LAW FIRM

By: /s/ David W. Bergquist
David W. Bergquist
Southern District of Texas No. 37790
Texas State Bar No. 24040512
1333 West Loop S, Suite 1700
Houston, Texas 77027
Tel. (713) 655-8000
Fax (713) 739-0000
Email: dwb@bergquistlawfirm.com
Attorney for Plaintiff
*ELITE CENTER FOR MINIMALLY INVASIVE SURGERY, LLC*